## SUPREME COURT, COUNTY OF DELAWARE.

|  |
|---|
| JOSEPH H. RAMSEY, *Plaintiff,* |
| *against* |
| JAY GOULD, JAMES FISK, Junior, FREDERICK A. LANE, ABRAM GOULD, M. R. SIMONS, GEORGE C. HALL, HENRY N. SMITH, CHARLES G. SISSON, HENRY H. MARTIN, JAMES B. BACH, and THE ERIE RAILWAY COMPANY, *Defendants.* |

On reading and filing the complaint herein, and the affidavits of Joseph H. Ramsey, Charles W. Douglas, Jackson S. Schultz and Ossian D. Ashley, and on motion of Mr. Henry Smith, on behalf of plaintiff, and it appearing to the court that there is good cause for so doing, it is ordered, and the several defendants (and all other persons to whom this order relates) are severally enjoined and restrained (till this court shall otherwise order,) as follows :

1. That no creditor of the Erie Railway Company do institute or promote any legal proceeding or suit (other than this) against the Erie Railway Company or against any other defendant herein instituted under (or intended to secure any relief authorized by) title four, of part three, chapter eight, of the Revised Statutes.

2. That no defendant do, by himself or itself, or by any attorney, counsel or agent, institute or promote any suit or proceeding intended or having for its object to embarrass or delay this suit.

3. That no director, officer or person, herein named as a defendant, do accept or admit service for or on behalf or in the name of the Erie Railway Company, of any summons, complaint, notice or other paper, either in this suit or in any other suit or proceeding against said company, or in any suit against any director or officer of said company, in respect of their official conduct in such capacity.

4. That no director, officer or person herein named defendant do directly or indirectly appear for, or authorize or request, or make any attempt to procure, any person or firm to appear for, represent, or assume to act for the Erie Railway Company, either in this suit or any other suit or proceeding to be hereafter commenced ; and that no such director, officer, or person do use any persuasion or other means to prevent said corporation selecting and authorizing those by whom it will be represented in this suit, and in any other suit or proceeding that has been or may be instituted against such corporation.

5. That from the date of the suspension of any director or officer of the Erie Railway Company, and during the continuance of such suspension, each and all such suspended officers and directors do not assume to have or undertake to exercise any authority, right, or privilege, as such officers or directors, and do not in any way or capacity interfere with the funds, business, property affairs, directors, officers, agents, or employees of said company, or remove,

Ramsey agt. the Erie Railway Co.

conceal, or interfere with the books, records, vouchers, or papers of said company, or with the books, records, vouchers or papers in which its accounts or business transactions are entered ; and do not, without the consent of said company, enter upon or into its grounds, premises, buildings, apartments or offices, or into or upon those it holds by lease, or has in its occupancy or possession for the purposes of any part of its business ; and do not retain or withhold any records, vouchers, paper, key, or other thing acquired by any defendant in his capacity as such director or officer, and necessary to and rightfully belonging to said company, or to any officer or person who may rightfully act in its behalf.

6. That neither the directors of the Erie Railway Company, nor said company do elect or appoint any one of the persons named defendant herein as a director or officer of said company, and do not give either of said persons any authority or agency in respect of said company, and do not authorize or confirm any act of said persons, or any or either of them, heretofore undertaken, done in its name or on its behalf, and do not recognize any authority in either of said persons hereafter in respect of said company, and do not discharge or settle any claim against either said person or officer during the period of their suspension respectively, or that of either of them.

7. That neither the Erie Railway Company, nor the directors or officers thereof not suspended, allow any suspended director or officer of said company, or their agents, (except pursuant to some specific order of the board of directors), to have access to any of the books, records, vouchers, funds, or papers of said company ; and do not in any event allow any such suspended persons or their agents to obliterate, alter, remove, conceal, destroy, make entries or erasures in, or have access to, save in the presence of some proper officer of said company, any such books vouchers, records or papers or funds.

8. That no new member of the board of directors of the Erie Railway Company be elected by the board, except pursuant to permission given by this court in this case.

9. That no director of the Erie Railway Company, not made a defendant herein, do, after notice of this injunction, resign as such director, without giving at least three days written notice of such intended resignation to the plaintiffs' attorneys herein, stating when such proposed resignation is intended to be offered and to take effect.

10. That no director, officer, or agent of the Erie Railway Company, or said company itself, do remove any of its books, records, papers or property beyond this state, unless the same be strictly according to proper usage, and necessary in the due discharge of duty and the proper administration of the company's affairs.

11. That the Erie Railway Company, and the directors not suspended, do not omit to take promptly, according to their duty, the proper action for causing said company to be faithfully and adequately represented in this suit, and in other suits and proceedings to which it may be or become a party.

12. That no more stock or bonds of the Erie Railway Company be created, issued or converted, until the further order of this court.

13. That no action to carry into effect the (pretended) resolution of said company, of October last, for narrow guage track, be taken or authorized.

14. That till the further order of this court, no re-classification of the board of directors of the Erie Railway Company be made.

15. That till the further order of this court, no stock, moneys, bonds or other securities, or the proceeds thereof, owned by the Erie Railway Company, or in which it is interested, nor the bonds, stock, or proceeds thereof, being part of the five millions created or issued since October last, be sold, pledged, transferred or parted with, by any

person or persons named as defendants, save to said com
pany, or to a receiver, or special receiver, appointed in this
suit.

16. That neither of the persons named defendants here-
in do buy, pledge, sell, assign, transfer, convert or in any
way part with any stock or bonds of the Erie Railway
Company not now outstanding in the hands of *bona fide*
holders, or not made, sold and converted, pursuant to the
direct and express authority of the board of directors of
said company, except to deliver the same to a receiver
appointed in this suit.

17. That neither of the persons named defendants herein,
in their respective capacities as directors, managers or offi-
cers of the ferry company running or nominally owning
ferry boats on the Hudson River, used for transportation
for the Erie Railway, or in their capacity as officers or
directors of the Buffalo, Bradford and Pittsburgh Railway
Company, or of the Long Dock Company, or of a line of
steamers on Lake Erie, aid, promote or consent to the doing
or omission of any act or thing that will prejudice or embar-
rass the business or interests of the Erie Railway Company
in any particular as to which said interest and business
should be protected.

18. That the persons named defendants, their attorneys,
counsel and agents, and each of them, refrain from doing or
allowing any act that will interfere with or embarrass the
operation of the Erie Railway Company, or those who ope-
rate the same, or injurious to its interests or business.

19. That no person, firm or bank, having the possession
of any money or deposits of the Erie Railway Company, do
recognize any authority or right of any person named de-
fendant in or to the same, or omit to allow the same to be
used and enjoyed by said company, or by any officer autho-
rized to act for said company.

R. W. PECKHAM, Jr. and HENRY SMITH, *for plaintiff.*

HIRAM GRAY, DAVID DUDLEY FIELD and T. G. SHEAR-
MAN, *for defendants.*

BALCOM, J. The place of trial of this action stated in the
complaint is Delaware county. But neither the complaint
nor any other paper before me in the case informs me where
the parties or any of their witnesses reside ; and I cannot
act upon any knowledge I have personally in respect to
such matters. I am, however, permitted to take judicial
notice of the fact that only one term of this court is ap-
pointed to be held in a year in Delaware county, at which
actions like this are usually tried; and that term is held on
the last Tuesday of July.

The injunction and orders in the action were granted on
the 23d day of last November, at a special term of this
court in said county, without any previous notice to the
defendants, and without any opportunity on their part to be
heard. The injunction prevents each and every of eight
directors of the Erie Railway Company (there are seventeen
in all) doing any act whatever as director of the company ;
and it forbids the whole seventeen doing many acts which
they might legally do were they not enjoined. One of the
orders suspends eight directors, named as defendants in the
action, so they cannot have or exercise any right, privilege
or authority in respect of said company, or its franchises or
property in any capacity whatever. That order also ap-
points Philo T. Ruggles, Esq., as referee ; and it gives him
inquisitorial powers, and authorizes him to take evidence
for certain purposes in the case. The other order appoints
David Groesbeck special receiver of certain money, prop-
erty and claims, and the proceeds thereof, to be collected,
realized, held and disposed of. The most extraordinary
powers are conferred upon Groesbeck. He is authorized,
upon the happening of a certain event, of which he is
made the judge, to control all the affairs of the Erie Rail-
way Company, and run the road. He is commanded to

afford all information in his power, and aid as he may be able, in the prosecution of this suit. And in the order appointing him, Ruggles is also made a referee, with authority to do a number of acts. The injunction and orders contain over thirty folios, and they are very sweeping and extraordinary for *ex parte* orders. No well considered precedent has been cited for such *ex parte* orders or injunction; and I am confident none can be found. This injunction and these orders were obtained as above stated, without the knowledge of the defendants, eight months, and perhaps twenty, in advance of a trial of the action on the merits, when it may appear from the evidence that the plaintiff was not entitled to either the injunction or orders.

The summons, complaint, injunction and orders were served upon the Erie Railway Company on the 24th day of last November, and on that day I granted an order staying the plaintiff's proceedings, except the service of the summons and complaint in the action on defendants not previously served, not exceeding twenty days, to enable the defendants to make a motion in some proper county, to have said injunction and orders vacated. On the 26th day of said November, I discovered that my order did not permit the service of the injunction and orders accompanying it on defendants, who had not been served with the same, and on that day I modified my order so as to allow such service to be made. I need not cite any authority to show that it was my duty, as a judge of the district in which the place of trial of the action is laid, or the duty of any judge in the state to grant such a stay of the plaintiff's proceedings. Every judge and lawyer in the state knows that my order was regular and proper, except perhaps in respect to the above mentioned omission, which injured no one, and which I promptly supplied without being asked so to do.

Judges CLERKE and PARKER also very properly granted orders, staying all proceedings by receiver Groesbeck.

The defendants were not obliged to make their motion

before the judge who granted the injunction and orders of which they complain. They noticed it for the first special term of the court, where it could be properly and regularly heard. And pursuant to a stipulation of the attorneys for the respective parties, the motion was adjourned to be heard, where it has now been argued.

The plaintiff's counsel made a motion before Justice MUR-RAY, at Delhi, on the 17th day of the present month, to have my order, staying the plaintiff's proceedings, vacated. But he held that such order was regular, and denied the motion.

The defendants could not appeal from the injunction or orders in question, because they were granted *ex parte* (8 *Paige's Ch. Reps.*, 481.) They were compelled to take such a motion as this, or submit to them. But the party who shall be defeated on this motion, can appeal from my decision.

Section 225 of the Code, athorized the defendants to make this motion, upon the complaint and the affidavits on which the injunction was granted, or upon affidavits on their part, with or without the answer.

The defendants' counsel have made the point that the plaintiff has not such an interest in the stock of the Erie Railway Company, or such claims or demands against the company, as entitle him to the injunction or orders in question, if they were to concede that the same were regularly granted which they deny.

It clearly is necessary that the complaint should state facts sufficient to show that the plaintiff has such an interest in the controversy, as entitles him to the relief demanded in the complaint, or the injunction and orders in question cannot be sustained, whatever the eight suspended directors of the Erie Railway Company may have done, or may have omitted to do.

It is alledged in the complaint that the plaintiff is "a creditor of the Erie Railway Company," and "the owner and holder of a past due claim for money, against and

legally payable by said company," and that he is the owner
of several fifth mortgage bonds of the company—also the
owner of several sterling bonds of the company—also the
owner of several other $1000 bonds of the company—also the
owner of several shares of the preferred and several shares
of the common capital stock of the company, "entitled to
be standing in his name on the books of said company, and
of the right to receive dividends thereon." It is futher al-
leged that "there are numerous other floating creditors of
said company." And the plaintiff avers that he brings the
action "on his own behalf and on behalt of all others of
the said stockholders and bondholders (so far as said stock-
holders are entitled to be heard herein), and on behalf of
all creditors of said company who shall join in and become
parties to this action, and contribute to the expense thereof."
But I am not informed that any other creditor or bond-
holder or stockholder has manifested any disposition to come
into the case on the part of the plaintiffs.

The complaint does not show when the plaintiff became
the owner of his claim for money against the company or
its amount, or its character, or how it accrued. Nor does it
state when he became the owner of any bond of the com-
pany, or when or for what the same was issued, or when
the same becomes due; or whether anything is due on any
bond he has, or the amount of his bonds. It fails to allege
that the plaintiff has any scrip or certificate for stock of the
company by assignment or otherwise; and it does not state
*facts*, from which any legal inference can be drawn that he
is "entitled" to have any stock stand in his name on the
books of the company, or which show a right in him to
receive dividends on such stock. He has contented himself
with stating conclusions of law respecting his title to his
alleged claim and bonds and stock of the company.

Common sense, as well as law, would indicate that the
plaintiff should have stated in his complaint the nature and
amount of any claim past due which he has against the

company, by note, bill, account or bond, or on coupons, so that the directors could pay the same and relieve themselves from suspension, or at least so that the directors who are not suspended or enjoined could pay it.

And I take it to be clear that such *facts* should have been averred in the complaint as would show the plaintiff's title to the claim, bonds and stock mentioned in it, which he *says* he owns. In respect to the stock, none is shown to be standing in his name on the books of the company. The court of appeals decided in the *City of Buffalo* agt. *Halloway*, (3 *Selden*, 493), that a statement in a complaint, "that by means of a contract" (which was set forth), "it became the duty of the defendant to perform certain acts, is not sufficient, unless *the facts* necessary to show the duty are stated." Judge SELDEN said, in *McKyring* agt. *Bull*, (16 *N. Y. R.*, 303), when speaking of the Code; "It was evidently designed to require of parties, in all cases, a plain and distinct statement of the *facts* which they intend to prove."

For aught the complaint shows, the plaintiff is a mere volunteer in bringing the action, and purchased his alleged claim and bonds and stock, or pretended right to the same, immediately before commencing it. And he has not alleged that he has demanded payment of any "past due" claim that he has against the Erie Railway Company, or that payment thereof has been refused.

No authority has been cited to establish that a complaint like this gives the plaintiff such a standing in court as entitles him to such an *ex parte* injunction or such *ex parte* orders as he has obtained.

It was held in *Galway* agt. *The United States Steam Sugar Refining Co.*, (36 *Barb.*, 257,) "that the Statutes provide for but three cases in which a receiver of the property of corporations (other than moneyed corporations) can be appointed: 1. Upon the application of a creditor *by judgment or decree*, on the return of an execution unsatisfied.

2. When the corporation has been insolvent for a year, or has neglected or refused, for a year, the payment of its debts, or has suspended its business for a year. 3. Upon the application of the directors or trustees, when in their judgment the condition of the corporation makes a voluntary dissolution desirable." In this case there are nine directors in office, who are not suspended, and are capable of acting, and were they simply trustees, the rule would partly apply, that " where there are two or more trustees, the court will not appoint a receiver upon the death, absence, disclaimer or *misconduct*, &c., of some or one of them, nor as long as there remains any trustee to act in the trust." (*Hill on Trustees*, 3d *Am. Ed. with notes, p.* 318.)

I am constrained by authority to hold that the plaintiff has not shown by his complaint that he has any standing in court as a creditor or bondholder or stockholder of the Erie Railway Company, so that he could have a receiver or referee appointed *ex parte* in the action. (*See Howe.* agt. *Deuel*, 43 *Barb.* 504; *Belmont* agt. *Erie Railway Co.*, 52 *Id.*, 637; *Mss.* opinion of Judge NELSON: *People* agt. *Erie Railway Co.*, 36 *How. Pr. Reps.*, 129.) I appointed a referee in the last mentioned case, but it was after hearing both parties and with their consent. If they had not consented to the appointment of a referee therein, I should not have appointed one, for it would have been unprecedented and unauthorized. Since the decision of *Belmont* agt. *The Erie Railway Co.*, (*supra*) the order in *The People* agt. *The Same* has been modified, upon a stipulation, *nunc pro tunc*, so that it conforms, respecting the right of the company to convert bonds into stock, to the opinion in Belmont's case, and the opinion of Justice INGRAHAM therein cited.

Two questions were pretty well settled about a year ago by this court, when an effort was made by some stockholders of the Erie Railway Company to have ex-Judge DAVIES made receiver of the company : 1. That a receiver

of the company could not be properly appointed in an action brought by a stockholder or a creditor who had no judgment (52 *Barb.* 637; 36 *How. Pr. Reps.*, 129.) 2. That the directors of the company, acting in good faith, have power to issue convertible bonds in the name of the corporation for the amounts they may borrow to complete and finish, or to operate the road, with the right to authorize their conversion into stock, although it increases the amount of capital stock beyond that fixed by the charter. And that being so, the right of the directors to issue stock in conversion of such bonds, is clear, (*Belmont* agt. *Erie Railway Co.*, *supra.*)

Chancellor WALWORTH held in *The People* agt. *Norton* (1 *Paige's Reps.*, 17,) that " as a general rule, a receiver should not be appointed without notice to the parties interested." He also held in *Devoe* agt. *The Ithaca & Owego Railroad Co.*, (5 *Paige*, 521,) that a receiver ought not to be appointed *ex parte*, and without giving the corporation an opportunity to be heard. And the same rule is laid down in several other well considered cases (*See Gibson* agt. *Martin*, 8 *Paige*, 481.)

In regard to the plaintiff's claim that he is " entitled" to have some stock of the company stand on its books in his name, I will say that if he had certificates for the same duly transferred to him, (which is not alleged,) he could have surrendered such certificates to the transfer agent of the company and requested that the stock be transferred to him on the books of the company, and upon a refusal of the agent to do it and issue certificates to him for such stock, he could have maintained an action against the company to recover *damages* for such refusal. (*See Commercial Bank* agt. *Kortright*, 22 *Wend.* 348.) But he could not compel such transfer of the stock by *mandamus*. This was held by Judge BRONSON in *ex parte The Fireman's Insurance Company.* (6 *Hill.* 243.)

It seems to me that it would have been wise at least for

the plaintiff to have seen that he was a stockholder on the books of the Erie Railway Company before bringing this action.

The defendants' counsel have argued that the *ex parte* order, suspending eight directors of the company, was entirely void ; and that the court has no authority to suspend them from the exercise of their offices, except by judgment after a default, or after a regular trial of the action upon the merits. One of the grounds for this position is that suspension of directors is not a *provisional remedy* authorized by the Code. It is not expressly authorized therein, and if the court has such power it exists by implication, or must be found in the revised statutes, or be based upon some principle outside of any statute of the state. By the revised statutes the court has power to suspend any director or officer of a corporation from exercising his office, whenever it shall appear that he has abused his trust; and to remove him from office, upon proof or conviction of gross misconduct. But it is further provided that this "jurisdiction shall be exercised as in ordinary cases, on bill or petition, as the case may require or the supreme court may direct, at the instance of the attorney general prosecuting in behalf of the people of this state, or at the instance of any creditor of such corporation, or at the instance of any director, trustee or other officer of such corporation having a general superintendence of its concerns." (3 *R. S.*, *5th Ed.*, 762 *and* 763, § 40, § 43 ; 2 *Id.*, *1st Ed.*, 462 *and* 463, § 33, § 36.)

No authority is conferred by these statutes upon a stockholder of a corporation to maintain an action for the removal or suspension of a director. If the plaintiff can sustain such an action, his right must rest upon the alleged fact that he is a creditor of the Erie Railway Company. I am not aware of any decision as to whether a creditor at large, without a judgment, can maintain such an action under the above statutes. (*See remarks of* NELSON, *Ch. J.*,

*on another statute, in Frisbee* agt. *Thayer,* 25 *Wend.,* 398.) But it is unnecessary to express an opinion on that question. For I think if such a creditor can maintain such an action under those statutes he must state in his complaint more facts than are alleged by the plaintiff herein. He must state the nature of his claims or demands constituting him such a creditor, and when and how they arose, and the amount due him, &c., so that the coporation can readily determine their validity and see what they owe him, and settle the same. It is obvious that a corporation has the right to pay its creditors, and thus avoid the removal or suspension of its directors from office. And common fairness requires that payment of a debt should be demanded of a corporation before such an action as this should be commenced.

It is uunecessary to determine the question whether the court had power to suspend eight directors of the Erie Railway Company from exercising their offices in this action, before a regular trial, without previous notice to them or the company. I will, however, say that no such power is directly conferred by statute. But there is a statute which expressly gives the court jurisdiction to issue an injunction, "before the coming in of the answer" to restrain any corporation from assuming or transacting any business not allowed by its charter. And this is in the same article in which the statutes are, that I have quoted. (2 *R. S.,* 462, §§ 31, 32.)

Now, if the court had the power to suspend directors (as exercised in this case,) I am of the opinion that proper caution required that they should have had reasonable previous notice of the time and place of the application for the order suspending them.

*In Ogden & Barker* agt. *Kipp and others, Directors of the North River Bank* (6 *Johns. Ch. Reps.,* 160,) the plaintiffs were stockholders of the bank, and in their bill of complaint they charged the defendants with fraud and corruption in

the control of the election for directors, and prayed for an injunction against nine of the directors to restrain them from all further interference as directors with the management and agency of the bank. But Chancellor KENT (upon due notice given to the defendants) refused to grant an injunction to restrain the defendants, whose election was colorable in law, from the exercise of their powers, or to appoint a receiver to take charge of the affairs of the bank before the coming in of the defendant's answers to the complaint. He said: "A trustee is rarely if ever divested of his trust until he has been heard in answer to the charges against him. And that nothing but the necessity of the case —such as the danger of irreparable loss—can justify a depar ture from this rule of common justice."

It is difficult to see what irreparable loss the plaintiff in this case would have sustained if he had been required to give the defendants eight days' previous notice of his application for the order suspending the eight directors, who are made defendants herein, from exercising their offices, unless it would have been the denial of his application, after such defendants had been heard; and I am of the opinion that he will not sustain any irreparable loss as a creditor of the Erie Railway Company, or otherwise (within the meaning of the rule,) if he should not have any injunction in the action until he establishes his alleged cause of action on a regular trial of the case.

I think there is another fatal defect in the plaintiff's case; which is the want of legal proof to sustain his complaint. Abuse by the suspended directors of their trusts, or gross misconduct by them, or fraud in the exercise of their offices, cannot be presumed without proper proof. No such charge can be sustained on hearsay evidence. Very few, if any, of the material allegations of the complaint of misconduct on the part of the suspended directors are positively sworn to by the plaintiff or sustained by the affidavits of his three witnesses. The complaint, except as to the alleged interest

of the plaintiff in the stock of the Erie Railway Company, and his claims against it, is made (as therein stated,) "on information and belief." The verification by the plaintiff, at the end of the complaint, is, that the same is true of his own knowledge, *except* as to matters therein stated *on information and belief*, and that as to those matters, he *believes* the same to be true." The letter of director Diven, annexed to the complaint, if regarded material, is not sworn to. He is not a defendant in the action, and whatever he wrote was mere hearsay evidence as against the suspended directors or the company itself; for the reason that it was not written in the transaction of any business by him as a director of the company. I need only say, respecting the three affidavits, annexed to the complaint, that nearly all, if not all the material portions of them, are as the deponents were *informed* and believed, or consist of opinions they could not legally give.

Chancellor WALWORTH held in the *Bank of Orleans* agt. *Skinner and others* (9 *Paige*, 305), that "Upon the *ex parte* application for the allowance of an injunction, if there is *any* material allegation, upon which the right to the injunction rests, which is not within the *personal* knowledge of the complainant, or of the agent or attorney who verifies the bill, the officer to whom the application is made should require to be annexed to the bill the additional affidavit of the person from whom the information is derived, verifying the truth of the information thus given." Justice INGRAHAM said, in *Hecker* agt. *The Mayor, &c.* (18 *Abb.*, 369), that "it is only where the verification of the complaint is *positive* that it will suffice as the affidavit." But I need not multiply authorities on this point; for it is plain common sense and common justice that no officer of a corporation should be suspended from exercising his office, except upon clear and positive proof.

It was said in *Woodward* agt. *Harris* (2 *Barb.*, 440), that "The power of a court of equity to issue preliminary injunctions ought to be exercised with extreme caution, and

applied only in very clear cases." The late Chief Justice GIBSON used language still stronger on the same question (17 *Penn. Reps.*, 9). In the case in 2 *Barbour* (*supra*), it was also said, "The writ will not be awarded in *doubtful* cases, or in *new* ones not coming within well-established principles."

I will here say that in order to prevent conflicts in decisions and orders of different Judges, and to protect corporations and their officers against suspensions and injunctions, that may be procured *ex parte* for sinister purposes, and which cannot be sustained, our legislature, in my judgment, should adopt a law of the United States (so far as corporations and their directors are concerned,) which provides, that, "No injunction shall be granted in any case, without reasonable previous notice to the adverse party or his attorney, of the time and place of moving for the same." (1 *Waterman's Eden on Injunctions*, 3d ed., *p.* 12.) I have not made this suggestion to reflect upon any judge; and I claim no exemption from blame myself for granting injunctions or orders *ex parte* in such cases, I think every judge has supposed (as I have) he was acting fairly and in furtherance of justice whenever he has granted an injunction, or order, *ex parte*, in such a case.

Some such act of our legislature seems to be necessary to secure harmony in the decisions of judges, and what Chancellor KENT called " common justice" to litigants.

If I have been able to understand the whole three hundred and forty folios of the plaintiff's complaint, it contains no important charge of improper acts against any defendant in the case, since the stockholders of the Erie Railway Company elected the defendants directors in October last past, except those touching the issue of five millions of dollars' worth (at par) of convertible bonds of the company to defray the expenses of laying a narrow guage track on its road bed, so that narrow cars can be run from Chicago to Jersey City. I should say if that proposition were fairly

and honestly carried into effect, it would be a benefit instead of a loss to the stockholders and creditors of the company; and that there could be no reasonable objection made to it, unless by competing railroad companies or the owners of stock in them.

Four of the eight suspended directors, as I read the plaintiff's complaint, were never directors prior to their election in October last. But those four have been suspended and enjoined in various ways, because of the plaintiff's fears and of acts alleged to have been done previous to that month by other directors, one of whom is a brother of one of the four, and related by affinity to another of them. I think nothing need be said to show the impropriety (to use no other word) of their suspension without previous notice of the motion for that purpose. To sustain the order suspending them the scripture rule, that visits the sins of fathers upon their children unto the third and fourth generations, must be extended laterally.

If the plaintiff was the owner of the stock of the company previous to the election of directors in October last (which is not alleged), he should have procured a proxy from the person in whose name it stood on the books of the company, and voted against the directors who, he now alleges, are unfit for their offices. Many millions of dollars of the stock, perhaps forty, or fifty, or more, may then have been voted upon; and yet, according to the complaint, only " a few " stockholders voted against the defendants. And, in my judgment, a sufficient excuse for any stockholder's failure to vote is not set out in the complaint.

It is an elementary principle of law that " a court of equity will not interfere by injunction where the suit is brought on behalf of any stockholders who have sanctioned *or acquiesced* in the acts complained of." (*Angell and Ames on Corporations*, 6 *ed.*, § 312.) It is also laid down that, " the remedy in case of loss by a corporation, by *misjudgment* merely of the directors, is to be found, *not in the*

*courts,* but in the corporation itself; in its power by new elections to confide its interests to other managers." (*Id.,* § 314; *also see Hill on Trustees,* 3 *Am. ed., with notes, p.* 292). In the case of the *Vestry and Wardens* agt. *Barksdale,* (1 *Strobhart's Eq. R.,* 202,) DUNCAN, Ch. J., said: "It is quite clear that this court has no authority to interfere with or control the *discretion* of the *Vestry and Wardens* unless they transgress the limits of their charter; however *unwisely* they may exercise the power, they are responsible only to their constituents, in whose hands a complete remedy exists through the quiet operation of the ballot-box." It has been adjudged in Maine, and asserted in *Eden on Injunctions* that "it is only when the plaintiff in equity has exercised *due precaution* to prevent an injury that he can be relieved by injunction." (*Burr* agt. *Wilson,* 9 *Maine R.,* 207; *Waterman's Eden on Injunctions,* 3d ed., p. 12.)

I think the plaintiff nowhere claims in his complaint that he was ignorant of the alleged misconduct of any of the eight suspended directors prior to their election in October last, or that he or any stockholder or bondholder or creditor of the company from whom he derives title, ever remonstrated against such alleged misconduct, or took measures to prevent it. Nor does it appear that either of the nine directors, who are not suspended, have used reasonable efforts to have more frequent or regular meetings of the board of directors than have been held. Nor have any considerable portion of the stockholders made any effort in that direction.

Stockholders, who did not vote against the suspended directors, at the last election of directors, must be deemed to have acquiesced in all acts of extravagance, or improvidence, and all acts arising from misjudgment by any of such directors, done prior to such election, of which said stockholders had information sufficient to put them upon inquiry.

Stockholders who will not look after their interests out of court, should not come into court for favors or orders resting in the discretion of the court.

There may be differences of opinion respecting the propriety and amounts of expenditures for depot buildings, offices, shops and equipments for railroads, and touching their connections and extensions, and also as to changes in the locations of their offices, shops and other buildings; and courts cannot interfere with the discretion of directors in such matters.

The neglect of stockholders to vote at the last election of directors was tantamount to a consent on their part that such stockholders, as did vote at that time, might· elect whomsoever they saw fit, directors of the company; whether they were moral or immoral men, or wasteful or extravagant, or improvident in the management of the affairs of the company. The law does not prescribe the moral qualifications of directors of corporations.

Until I saw the charges of immorality in the complaint against some of the suspended directors, I had supposed, that if a majority of the stockholders of the Erie Railway Company prefer to have immoral men or speculators for directors (and I fear many railroad companies have some directors of that character), they had the *legal* right to elect them directors; and that they could make as depraved a person a director, as a *libeller*, " whose heart (to use the language of a former chief justice of Pennsylvania), is more dark and base than that of an assassin, or than his who commits a midnight arson." (*Oswald's case*, 1 *Dallas' R.*, 329.)

The law is so familiar, that I hardly need to say that stockholders of the company, who have not expressly sanctioned a fraud or abuse of trust on the part of the directors, can compel such directors to account for the same, and that merely voting for such directors, or neglecting to vote against them, would not estop stockholders from making directors

account for their frauds or abuses of trust. But when directors are only unwise, or merely extravagant or improvident, or slightly negligent, or merely misjudge in the performance of their duties, the remedy of stockholders is to elect other persons directors in their places.

The fact that the complaint is not *positively* verified, or positively sustained by affidavits (as has already been seen), relieves me from making any extended remarks upon it. But I will say that it contains many serious allegations of fraud and corruption against three of the suspended directors, who are defendants in the case. It also contains matter that should have been left out, which is better calculated to degrade the suspended directors, and lower the other directors of the company, and the judiciary in the estimation of the people, and to cause insubordination and strikes among the employees of the company, than for any other purpose. Ignorant persons who read such matter may be led to suppose that the defendants have no rights which courts are bound to respect.

If the plaintiff purchased whatever interest he has in or against the company since the last election of directors of the company (and the complaint does not aver the contrary,) for the purpose of bringing this action, he should surely be compelled to wait for any injunction or other extraordinary order in it until it shall be regularly tried upon the merits, when justice can be done according to the evidence, and not be guessed at from *ex parte* allegations or affidavits.

It is my duty to decide this motion as I think it ought to be decided, within the legal rules applicable to it, and precisely as the judge who granted the injunction and orders in question should have decided, and undoubtedly would have decided, if he had heard the defendants' counsel before he made any order in the case.

It is due to the able and worthy judge who granted the injunction and orders in question, to say that any other

Ramsey agt. the Erie Railway Co.

judge might have granted the same injunction and orders upon an *ex parte* application therefor. But I do not doubt that he would have refused to grant either the injunction or orders if he had heard the defendants' counsel in opposition thereto, upon the questions in the case, and had had his attention called to the authorities applicable to it.

I have omitted to speak of the smallness of the plaintiff's alleged interest in this controversy (the amount of which I infer from what took place on the argument, is less than ten thousand dollars in value, and perhaps not over half of that sum) when compared with the great interests and rights in jeopardy on the part of the defendants. I have done so for the reason that there are other and controling questions in the case.

My decision will not prevent the plaintiff moving, upon due notice, for an injunction to restrain any of the defendants from doing wrongful or illegal acts as directors of the Erie Railway Company during the pendency of the action.

For the foregoing reasons I am of the opinion that the injunction and orders in question should be vacated and annulled with costs, and I so decide.

There is a ground I have not noticed, on which I think it probable I should have vacated the injunction and orders in question, if it had been presented and discussed on the argument of this motion.*

I greatly regret that the illness of my brother PARKER has cast the responsibility of hearing and deciding this motion upon me. I can only hope that I have determined it as he would have done if he had been able to hear it.

---

* NOTE.—This ground is the improper interference of the press in the case to aid the plaintiff and prejudice the defendants with the courts; which, interference is believed to have been caused by the plaintiff or his attorneys or some person interested on his side of the case. *(See Forum by David Paul Brown, Vol. 1, p. 336 to p 339.)*